· [No. 9530. Department One. July 8, 1911.]

E. M. STANTON, *Respondent*, v. W. H. DENNIS, *Appellant*.[1]

CONTRACTS—BID—ACCEPTANCE—FURTHER WRITING—BREACH. A bid by a subcontractor, offering to do the carpentry work on a building for a specified price, with a notation "Formal contract to follow," does not constitute a completed contract, although accepted in writing, where it specified no time when the work should be commenced or completed, nor the character of the work or time for payment; and no action lies for its breach where the bidder did not prepare and forward for execution a formal contract embodying such further details as the character of the work required.

Appeal from a judgment of the superior court for King county, Tallman, J., entered November 18, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Reversed.

*Brady & Rummens* and *Henry W. Pennock*, for appellant, contended that there was no completed enforcible contract. 9 Cyc. 280; *Megrath v. Gilmore*, 10 Wash. 339, 39 Pac. 131; *McDonnell v. Coeur d'Alene Lumber Co.*, 56 Wash. 495, 106 Pac. 135; *Wardall v. Williams*, 62 Mich. 50, 28 N. W. 796, 4 Am. St. 814; *Morrill v. Tehama Consol. Mill & Min. Co.*, 10 Nev. 125; *Ferre Canal Co. v. Burgin*, 106 La. 309, 30 South. 863; *Edge Moor Bridge Works v. County of Bristol*, 170 Mass. 528, 49 N. E. 918; *Lyman v. Robinson*, 14 Allen 242.

*John E. Ryan* and *Grover E. Desmond*, for respondent, contended that the contract was complete, any further writing being but an unnecessary formality. 9 Cyc. 280; *Gooding v. Moore*, 150 N. C. 195, 63 S. E. 895; *Hodges v. Sublett*, 91 Ala. 588, 8 South. 800; *Pratt v. Hudson R. Co.*, 21 N. Y. 305; *Sanders v. Pollitzer Bros. Fruit Co.*, 144 N. Y. 209, 39 N. E. 75, 43 Am. St. 757, 29 L. R. A. 431; *Cohn v.*

[1]Reported in 116 Pac. 650.

*Plumer*, 88 Wis. 622, 60 N. W. 1000; *Drummond v. Crane*, 159 Mass. 577, 35 N. E. 90, 38 Am. St. 460, 23 L. R. A. 707; *Disken v. Herter*, 73 App. Div. 453, 77 N. Y. Supp. 300; *Blaney & Morgan v. Hoke*, 14 Ohio St. 292; *Pierce v. Cornell*, 117 App. Div. 66, 102 N. Y. Supp. 102; *Allen v. Chouteau*, 102 Mo. 309, 14 S. W. 869; *Long v. Needham*, 37 Mont. 408; 96 Pac. 731.

Fullerton, J.—Sometime in 1909, the Thompson-Starrett Company entered into a contract to construct an addition to the Fidelity Trust Company's building in the city of Tacoma. Thereafter they sublet the contract for doing the painting and carpentry work on the building to the appellant, W. H. Dennis. The appellant being desirous of again subletting the carpentry work, requested one Phil E. Dunnavant to bid thereon, at the same time furnishing him with a copy of the plans and specifications of the work. Later on Dunnavant submitted the following writing:

"W. H. Dennis,                Portland, Ore., Jan. 7th, 1910.
      "Seattle, Wash.

"Dear Sir:—Confirming our conversation with you over long distance phone this afternoon we propose to furnish all labor for setting mill work and carpentry on the addition to the Fidelity Trust Co.'s building at Tacoma, Wash., for the sum of five thousand seven hundred and no-100 dollars ($5,700).     .

"The work above mentioned is to be included and above the seventh floor and is to be in accordance with plans and specifications prepared by D. H. Burnham, Chicago.

"It is understood that we are not to furnish labor for laying floors, putting up door jacks or setting any centers or grounds.     .

"It is also understood that we are to furnish no material of any description used in setting the mill work or in any of the carpentry work.

"Formal contract to follow.     Phil E. Dunnavant & Co.
"Accepted: ............     Per Phil E. Dunnavant."

This writing with duplicate copies was forwarded to the appellant by Dunnavant, who, upon receipt thereof, wrote

his name after the word "Accepted," and returned the same to Dunnavant. Early in February, 1910, Dunnavant became financially embarrassed and sought the appellant and suggested to him the idea of putting the contract in the name of a third party. The appellant took the matter under consideration and Dunnavant returned to his home at Portland, Oregon, from which place he wrote the appellant as follows:

"W. H. Dennis,        Portland, Oregon, Feb. 25th, 1910.
    "White Building;
        "Seattle, Wash.
"Dear Sir: Would like to have you write me and let me know what response you got to the telegrams you sent while I was there. I have had to turn all of my work over to the bonding companies as I was unable to pull through. It will help me a great deal if you will give me some information about the Spokane job and also the Tacoma job. I have been expecting a letter from you daily since my return, but so far have received none. Thanking you in advance, I am,
        "Yours very truly,
            "Phil E. Dunnavant."

To this the appellant answered by the following letter:

"Mr. Phil E. Dunnavant,                Feb. 28, 1910.
    "Portland, Oregon.
"Dear Sir: In answer to yours of last week, will say that under the circumstances it will be impossible to do the work as we talked of in our talk when you were up here and will have to arrange with some other contractor to do the work at Spokane and Tacoma. Am sorry but can not do any thing else as it has turned out. Yours truly,
            "W. H. Dennis & Son."

The reply was as follows:

                "Portland, Oregon, March 2nd, 1910.
"Mr. W. H. Dennis,
    "Seattle, Wash.
"Dear Sir: Your letter of the 28th ult. received and carefully noted, under existing circumstances I do not feel like letting the contracts for the Tacoma and Spokane jobs go as there is good prospects in them for me, if I can make

no other arrangements with you I will have to carry them on as was first intended.   I will probably be in Seattle some time in the near future and will talk the matter over with you, but in the meantime would like to know just how the work stands on the two jobs as I have my men ready to go on short notice. Trusting that I will hear from you as soon as possible, I beg to remain    Yours very truly,

"Phil E. Dunnavant."

No formal contract was ever forwarded for execution by Dunnavant, and none in fact was entered into, and thereafter the appellant prosecuted the work described in the writing through other parties.    After the completion of the work, Dunnavant assigned his claim to the present respondent, who brought this action on the accepted writing to recover damages as for breach of contract.    The cause was tried in the court below by the judge sitting without a jury, and resulted in a judgment in favor of the respondent for the full amount claimed: namely, $1,700.    To reverse the judgment, this appeal is prosecuted.

The principal question suggested by the record is whether the writing containing the bid of Dunnavant and the acceptance thereof by the appellant constituted the completed contract between the parties, or was it an agreement settling some of the terms of a contract to be entered into later. The face of the writing, it is at once apparent, indicates that it was intended as the latter rather than the former.    After specifying certain particulars, it expressly provides that a formal contract is to follow.    If the writing itself was intended as the completed contract, there would have been no need for this proviso.    A contract complete in itself does not need the sanction of another contract.    Again, the contract, when tested by the surrounding circumstances, seems incomplete.    It refers to work of a particular character in a described building, yet it specifies no time when the work shall be begun, when it shall be completed, the character of the work that shall be performed, or when payment for the work

shall be made. While the law in such cases implies certain conditions, namely, that the work shall be commenced and completed within a reasonable time after demand, shall be performed in an ordinary skillful manner, and shall be paid for within a reasonable time after its completion, it is apparent that these conditions might not satisfy the appellant. He was a subcontractor of Thompson-Starrett Company and bound to perform according to the stipulations of his written contract with them, which might vary materially from the stipulation implied by law. This being true, the appellant very naturally would want the contract under which the work was to be actually performed conditioned so as to accord with his contract with the original builder. The writing, in whatever aspect it is viewed, therefore, seems to us to point to the conclusion that it was not intended to be the final agreement between the parties.

The evidence also, we think, sustains this conclusion. The appellant testifies to the fact positively, and Dunnavant admits that such a thing was talked over between them, but that the purpose was to put the contract in more formal shape rather than supply any further details. Both parties were men of ability and experience, and it would hardly seem that if they intended this writing to be a complete contract between them they would solemnly provide, both in writing and orally, for a further agreement.

By the conditions of the writing it was Dunnavant's duty, after the acceptance by the appellant of the terms proposed, to prepare a formal contract embodying such terms and such further details as the character of the work required, and forward the same to the appellant for execution. Failing in this, he had no cause of action against the appellant, as the appellant could not otherwise be put in default, and of course no cause of action passed to his assignee by the assignment.

The judgment appealed from is reversed, and the case remanded with instructions to enter a judgment in favor of the

appellant to the effect that the respondent take nothing by his action.

DUNBAR, C. J., MOUNT, PARKER, and GOSE, JJ.; concur.